UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
Patrick Donohue, *individually and as Parent*      :
*And Natural Guardian of S.J.D.*,                  :
                                    Plaintiff,     :
                                                   :
          -against-                                :
                                                   :
New York City Department of Education,             :
                                                   :
                                    Defendant.     :
                                                   :
                                                   :
------------------------------------------------------------------ x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ___9/30/2021___

1:20-CV-1942-ALC-KHP

Opinion and Order

ANDREW L. CARTER, JR., District Judge:

Plaintiff Patrick Donohue brings this action, individually and on behalf of his daughter S.J.D., pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, seeking reversal of a decision by a State Review Officer finding that equitable factors weighed against Parent and ordering a 25 percent reduction of his reimbursement award for tuition, related services, and transportation in connection with S.J.D.'s IEP for the 2018-2019 school year. Defendant New York City Department of Education ("DOE") cross-moves for summary judgment. For the reasons stated herein, Plaintiff's motion for summary judgment is DENIED and Defendant's cross-motion for summary judgment is GRANTED.

## BACKGROUND

### I. IDEA Framework

Among the purposes of the IDEA is to ensure that children with disabilities have "a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs" and "that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A)-(C). "To receive federal funding, states must make a FAPE available for all children with disabilities. 20 U.S.C. § 1412(a)(1)(A).

"The centerpiece of the IDEA's education delivery system is the individualized education program, or IEP." *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 81 (2d Cir. 2005) (internal quotation marks and citations omitted). An IEP is "a written statement for each child with a disability that is developed, reviewed, and revised" for a child with a disability that shall go into effect no later than the beginning of each academic school year. 20 U.S.C. § 1414(d)(1)(A) & (d)(2)(A). A local Committee on Special Education (CSE) is tasked with the creation of an IEP. 20 U.S.C. § 1414(d)(1)(A)-(B); N.Y. Educ. Law § 4402(1)(b)(1). The IEP must be "reasonably calculated to enable the child to receive educational benefits." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107 (2d Cir. 2007) (citation omitted).

## II. Factual Background

The facts herein are taken from the Administrative Record, ECF Nos. 14, 20, and the parties' submissions in connection with their motions. Unless otherwise indicated, the facts are undisputed. Patrick Donohue ("Plaintiff" or "Parent") is the parent and natural guardian of S.J.D. ("Student").

### A. Student's Medical and Educational History

When Parent commenced this action, S.J.D. was a fourteen-year-old girl who, due to traumatic brain injury ("TBI") caused by shaken baby syndrome, was diagnosed with cortical visual impairment, cerebral palsy, and a seizure disorder. 175162-002745. She is non-verbal, non-ambulatory, and faces severe impairments due to her medical conditions that negatively impact her educational abilities and performance. 175162-002745. She is fully dependent for all her daily living needs and therefore requires extensive accommodations during the school day. 175162-002745. S.J.D. is a New York resident and classified as a student with a disability, entitling her to a FAPE under the IDEA.

2

**B. Prior Academic Years**

For the 2015-2016 and 2016-2017 academic years, Parent did not contest the district's proposed placement of Student in an approved nonpublic school. 175162-000006. During those years, Parent challenged the implementation of the district-developed IEPs but did not challenge the IEPs themselves. *Id.* Parent participated in the CSE review meetings for the IEPs for those years. *Id.*

However, for 2017-2018, Parent challenged the IEP on the basis that a CSE convened a meeting without him and still proceeded to develop an IEP for Student. On December 15, 2017, Parent filed a Due Process Complaint (Case No. 171539) with the Impartial Hearing Office claiming that the district had failed to provide Student a FAPE for the 2017-2018 academic year—having convened a CSE meeting without the Parent and then failing to reconvene a meeting with him. 175162-003144.

On April 30, 2018 and after hearing, Impartial Hearing Officer (IHO) Vanessa M. Gronbach ruled in favor of Parent in Case No. 171539. 175162-003154. Based on the district's concession of FAPE and a review of the administrative record, IHO Gronbach found that "the District did not allow the Parent to participate in the creation of the IEP and ignored the Parent's request for updated evaluations, therefore denying the Student with FAPE during the 2017/18 school year." 175162-003150. After determining that the district had denied Student a FAPE for the school year, IHO Gronbach further concluded that International Academy of Hope ("iHope") was an appropriate placement for Student. 175162-003152 to 53. On the issue of equitable considerations, IHO Gronbach relied on Parent's testimony that he had attended all prior IEP meetings for Student since pre-school and had always consented to evaluations to conclude that he "fully participated in all aspects of the special education process." 175162-003153. IHO

Gronbach ordered prospective funding/tuition reimbursement for Student's attendance at iHope, including transportation costs, for the 2017-2018 school year and that the district reconvene an IEP meeting at a mutually agreeable date and time with "Student's teachers, providers, and the Parent" within 30 days. 175162-003153 to 54.

### C. Planning for the 2018-2019 Academic Year

In a letter dated December 27, 2017, the DOE had scheduled Student's Social History Update and Psychoeducation Evaluation (SHU & PE), prerequisites for the 2018-2019 CES meeting to prepare Student's IEP, for January 20, 2018 at 10:30am. 175162-002841. The district rescheduled the SHU & PE for March 11, 2018 at 10:30am after Parent notified them on January 18, 2018 that Student would not be able to attend the evaluations on that date because she was in the hospital for two weeks. 175162-002794 to 95, 175162-002839 to 40. He also informed DOE that he had not received a letter regarding the January 20, 2018 SHU & PE appointments. 175162-002795.

On February 14, 2018, the district sent Parent a CSE Meeting Notice for April 16, 2018 at 9:30am, which included the names and titles of district personnel expected to attend the meeting: special education teacher/related service provider, district representative, school psychologist, and Parent. 175162-002807 to 809, 175162-002794. The Meeting Notice also contained standard language indicating that parents "may also request that the school district include the participation of the school physician in the CSE meeting" in writing at least three days before the meeting and that parents should contact the district if they are unavailable for the meeting and want to discuss alternative means of participation like telephone conference calls. 175162-002808.

4

On February 27, 2018, the district emailed Parent and an iHope representative requesting documentation—"teacher's/progress reports, related service provider progress reports, student's work samples, student assessments, most recent report card and/or transcript" and any other relevant documents—in preparation for the IEP meeting. 175162-002794. Following a request from Parent to reschedule the meeting for an afternoon time, the district also changed the meeting time on April 16, 2018 from 9:30am to 12:30pm. 175162-002794. The district issued a CSE Meeting Notice dated February 27, 2018 to Parent memorializing the new date. 175162-002804 to 806.

On March 11, 2018—a rescheduled date for the SHU & PE—Parent was a no show for the appointments. 175162-002794.

With five days before the scheduled CSE meeting, on April 11, 2018, Parent emailed the CSE chairperson that he needed to reschedule the IEP meeting because, he wrote, the proposed date "d[id] not work" and that he "w[ould] follow up with CSE next week to find a mutually agreeable date and time to reschedule the IEP meeting" so that the group could "develop an appropriate and timely IEP for [Student]." 175162-002793.

The following day, and presumably unaware that Parent had cancelled the April 16, 2018 CSE meeting, a CSE special education teacher asked that iHope forward the previously requested reports for the CSE meeting. 175162-002793. iHope replied indicating that they had just been notified that the family had cancelled the CSE meeting scheduled for April 16, 2018. 175162-002793. The CSE special education teacher replied: "Do you know the reason for these last minute cancellations? Also, can you please forward us progress reports?" 175162-002793. The iHope representative responded: "As you know from our phone conference yesterday[,] this directive is coming from the parent's attorney. Unfortunately, as discussed yesterday[,] until we

have legal counsel confirm that we can share the student reports, I will not be able to forward those to CSE." 175162-002793.

The district sent a letter dated April 13, 2018 for SHU & PE on May 9, 2018 at 4:00pm— as Parent had not shown for the previously scheduled March 11, 2018 appointments. 175162-002792. Four days later, on April 17, 2018, the district followed up on the appointment letter (and to schedule the IEP meeting), leaving a voicemail for Parent requesting that he return their call. 175162-002792. The district also mentioned in the voicemail that the end of the school year was approaching. 175162-002792.

On April 18, 2018, by Prior Written Notice the district notified Parent and iHope by letter that the IEP meeting date would be adjourned until June 1, 2018 at 1:00pm. 175162-002801 to 803, 175162-002882, 175162-002792. The letter also indicated that the SHU & PE appointments date would be rescheduled for May 9, 2018. 175162-002883. It also reminded Parent to provide "teachers/providers' progress reports and any updated assessments to the CSE prior to the scheduled IEP meeting." 175162-002883.

On May 8, 2018, Parent emailed a letter attachment to the CSE chairperson to tell her that he wanted the upcoming CSE meeting to be a "Full Committee Meeting as well as a DOE School Physician" to participate in person. 175162-002880, 175162-003345. The letter further indicated that Parent wanted Student's special education teacher and certain of her iHope service providers to be sent any meeting notices as well regarding Student. 175162-002880. He added that he wanted the meeting to be held at iHope during a weekday after 3:00pm and that, once a mutually agreeable date and time was set, he would provide "the most recent progress reports and any other documentation" for the CSE meeting. 175162-003932, 175162-002880 to 2881.

On May 10, 2018, the district logged that Parent, again, was a no show for the SHU & PE appointments scheduled for the day before. 175162-002792, 175162-002892. Parent had written an email to the CSE chairperson on May 8, 2018 cancelling the May 9, 2018 evaluation date because he was traveling overseas that week and would not be available. 175162-002879.

On May 22, 2018, the CSE chairperson sent an email to iHope requesting Student's "current teachers' and therapists' information." 175162-002792.

On May 25, 2018, the district sent a revised appointment letter rescheduling Student's SHU & PE appointments for May 29, 2018 at 4:00pm. 175162-002792, 175162-002829 to 2830. Student finally attended the evaluation appointments on May 29, 2018. 175162-002791, 175162-002892. The district sent copies of the evaluation reports by email to Parent. 175162-002791, 175162-002892.

On May 30, 2018, a CSE representative again reached out to iHope for "Teacher and Provider Progress Reports," reminding iHope that the IEP meeting was scheduled for two days later—June 1, 2018—at 1:00pm. 175162-002790.

In a Prior Written Notice dated May 31, 2018, the district granted Parent's request to reschedule the IEP meeting and set a new date for June 14, 2018 at 4:00pm. 175162-002892. However, the district refused Parent's request to hold the meeting at iHope:

> Your request to schedule the IEP meeting at iHOPE program is not granted. CSE 10 has scheduled to hold this IEP meeting at a location that is physically accessible and convenient for all participants. At this time, CSE 10 cannot agree to your request to hold this IEP meeting at iHope without further information regarding your request. Accordingly, the IEP meeting will be scheduled to take place at the CSE 10 office. As per your request, a DOE physician will also participate in this meeting.
>
> The District will facilitate a phone conference number to allow you and your team members to participate via teleconference.

> **To ensure appropriate and timely services for the 2018 – 2019 School Year, we must proceed [with] the IEP Meeting; which is scheduled on June 14th, 2018 at 4PM[.]** 175162-002893 (emphasis in original).

The Notice reiterated the CSE's request for Parent to provide progress reports and any update assessments on Student for the upcoming IEP meeting. 175162-002893.

In a CSE meeting notice dated June 1, 2018, the district informed Parent that the meeting would take place on June 14, 2018 at 4:00pm. 175162-002798, 175162-002900. The meeting notice included a full list of anticipated attendees: special education teacher/related service provider, district representative, Parent, speech representative, vision education teacher, physician, as well as a PT and OT.[1] 175162-002900.

On June 4, 2018, the CSE chairperson also emailed iHope and Parent attaching documentation regarding the upcoming IEP meeting and current assessments and, in her email to iHope, requesting "updated progress reports as soon as possible." 175162-002789, 175162-002790, 175162-002903.

On June 10, 2018, a social worker from the district left Parent a voicemail regarding the upcoming IEP meeting scheduled for June 14, 2018—four days later—and to remind Parent to ask iHope "to provide any progress reports or relevant information that could be important for this meeting." 175162-002790. Three days later, the CSE chairperson emailed iHope and Parent to remind them of the CSE meeting scheduled for June 14, 2018 at 4:00pm and to ask for "progress reports in preparation for th[e] IEP meeting." 175162-002789.

On the afternoon of June 14, 2018, Parent emailed the CSE chairperson a few hours before the meeting, stating that "[a]t this time, this meeting cannot take place." 175162-002885. Parent stated that he wanted a "Full Committee and a DOE School Physician" for the meeting:

---

[1] While not specified or defined in the CSE Meeting Notice, based on its review of the administrative record, the Court assumes that "PT" and "OT" refer to physical therapist and occupational therapist, respectively.

In my previous communication I requested a Full Committee and a DOE School Physician participate in my daughter's IEP Meeting. The Meeting Notice you sent is missing a DOE School Physician, a Parent Member, and a Social Worker. Therefore, please reschedule this meeting with a new meeting notice that includes the names of the full committee members and confirmation they will be at the IEP Meeting in person. 175162-002885, 175162-00347.

The CSE chairperson replied:

Good afternoon [Parent],

As indicated on the [prior written notice] dated May 31st, 2018: we must proceed with your child's IEP meeting in order to ensure timely and appropriate services. In addition, please note that your request for a DOE physician was granted and all members are ready to participate in today's meeting.

Please consent to the release of your child's progress reports so that the IEP team can prepare for today's IEP meeting. Also, feel free to submit any other educational records for the team's consideration. We look forward to meeting you today at 4PM. 175162-002788 to 89.

The district held the CSE meeting without Parent present and developed Student's 2018-2019 IEP. A related service provider/special education teacher, district representative, physician, and parent member attended that meeting. 175162-002763. According to handwritten notes from the CSE meeting, "[p]arent did not cooperate with many attempts to schedule annual review" and "[a]fter repeated notices, he did not attend annual review to implement IHO order on IEP." 175162-002764.

On June 21, 2018, William Frazier, Chief of Staff from the Brain Injury Rights Group, provided DOE with ten days' notice, on behalf of Parent, accusing the DOE of not having "offered a program or conducted a Full Committee Meeting along with a DOE School Physician to develop an appropriate IEP for the 2018/2019 school year" and that "the intent [wa]s to unilaterally place Sarah at the International Institute for the Brain ["iBrain"] for the 2018-2019 school year." 175162-002825. Mr. Frazier further stated that the Parent intended to pursue public funding for the iBrain placement and that the specialized program at iBrain was an appropriate

fit for the Student. 175162-003348. He continued on: "Should an appropriate program be developed and an appropriate placement be offered, please advise the parent . . . . At this time, however, the parent has no choice other than to enroll [Student] at [iBrain]." 175162-003348. By email, the DOE confirmed receipt of the ten days' notice letter on the evening of June 21, 2018. 175162-003349.

A subsequent reconvene meeting took place on June 23, 2018 regarding Student's IEP with the district school psychologist and special education teacher. 175162-003914. Parent was not in attendance. The subsequent IEP removed certain services, air conditioning and limited travel time of under 60 minutes, from Student's special transportation portion of the IEP. 175162-002767 to 2784, 175162-001504. The district did not provide Prior Written Notice to Parent or iHope regarding the June 23, 2018 CSE meeting.[2] Nonetheless, a copy of the revised IEP was sent to Parent on June 23, 2018. 175162-002810 to 2814. The district-developed IEP indicated that they intended to place Student at East Side Middle School. 175162-002815. On the same day, however, Parent unilaterally placed S.J.D. in a private school (iBrain). 175162-002788.

### D. Due Process Complaint for the 2018-2019 Academic Year

On July 9, 2018, Parent filed a Due Process Complaint (Case No. 175162) alleging that the DOE deprived S.J.D. of a FAPE by committing substantive and procedural violations and hindering Parent's ability to participate in the development of the Student's FAPE for the 2018-2019 academic year. 175162-003138 to 39. Parent alleged (i) that the DOE did not hold the June

---

[2] On August 2, 2018, the CSE sent a response to Mr. Frazier's June 21, 2021 letter, noting that a CSE meeting was held on June 14, 2018 and providing a copy of the IEP and School Location Letter. 175162-002825. Their letter further stated that they "deem[ed] the recommendations and school location appropriate to meet [Student's] educational needs" and that a DOE physician, district representative, and special education teacher had participated in the June 14, 2018 IEP meeting. 175162-002825.

14, 2018 CSE meeting at a mutually agreeable date and time for Parent; (ii) that DOE failed to

provide Student an appropriate IEP by ignoring his May 8, 2018 request to hold a Full

Committee IEP meeting and proceeded to hold the IEP Review meeting in Parent's absence; (iii)

that the IEP issued at the meeting will expose Student to "substantial regression" and fail to

confer any "meaningful educational benefit" for the 2018-2019 school year; (iv) that the IEP is

inappropriate because it does not account for Student's "present levels of performance and

management needs and contains immeasurable goals;" and (v) that the DOE failed to provide for

an appropriate placement that met Student's individualized needs. 175162-003139 to 40. The

Due Process Complaint included a Proposed Resolution from Parent that asked the school

district for payment of the full cost of tuition at iBrain for the 2018-2019 school year, including

transportation costs, and to reconvene an IEP meeting for Student. 175162-003140.

### E. IHO John Farago Findings of Fact and Decision (FOFD)

On July 17, 2019, after hearing, IHO John Farago found that, for the 2018-2019 school

year, (1) the DOE had denied S.J.D. a FAPE, (2) Parent's unilateral placement of S.J.D. at iBrain

for the year was appropriate, and (3) as a remedy for Parent, limited the allocation of school

reimbursement costs to the district to "the lowest of: its actual out-of-pocket cost to the providers

retained for this student if they are independent contractors; or $1/25^{th}$ of their annual salary if

they are employees; or the lowest amount paid by the district to the same provider for

comparable services during 2018-19; or, in the case of transportation, the amount the provider

would receive for provision of the same service were it to be funded under Medicaid; or the

above delineated rates." 175162-000019.

Once IHO Farago ruled that under the *Burlington-Carter* framework the district denied

Student a FAPE for the year and that Parent unilaterally placing her at iBrain was appropriate, he

moved on to the third and final prong—the equities. In crafting an award of reimbursement for Parent, IHO Farago determined that both Parent and the district had undermined the legitimacy of the IDEA process, which essentially cancelled out the equities. *Id.* He wrote that Parent's refusal to cooperate with the district was "damning" despite the procedural flaws attributed to the district and that the district's failure to comply with the Parent's request for a district physician and social worker to attend the IEP meeting in person was "troubling." 175162-000009. He found that the balance of equities was not in favor of either party as the family, in refusing to participate in the meeting failed to comply with regulatory requirements, and the district, in proceeding with the meeting without the family, clearly violated mandated IDEA procedures. 175162-000008 to 09. Examining the equities based upon what would be a "just outcome for — the student," he concluded that the district should be held accountable for its denial of FAPE but that the Parent should not be rewarded "for any excesses the family may have lavished on beyond [Student's] appropriate IEP" for the school year. 175162-000009, 000010. This finding was based on his application of *Burlington-Carter*, which he explained does not create a three-part inquiry in his view, but rather that equity forms "the foundation and legal context" for something more like a two-step inquiry focused on (i) liability and then (ii) remediation. 175162-000008.

Ultimately, IHO Farago granted injunctive relief to place Student at iBrain for the 2018-2019 academic year, reimbursement to the family for out-of-pocket costs for her placement at iBrain, and direct payment to iBrain for any outstanding amounts that had not yet been paid for the school year. 175162-000017. He crafted a remedy reducing the reimbursement amounts to Parent based on a specific cost approach and as "the consequence of [Parent's] contribution to the equitable factors." 175162-000019.

12

**F. State Review Officer (SRO) Justyn P. Bates Decision**

DOE appealed the IHO Findings of Fact and Decision in its entirety, and Plaintiff cross-appealed from the IHO's decision to reduce their request for full reimbursement of tuition, related services, and transportation at iBrain during the 2018-2019 academic year. The SRO sustained in part both the appeal and cross-appeal. 175162-003950.

On November 4, 2019, SRO Justyn Bates issued a 41-page decision. While the SRO agreed with IHO Farago that DOE had denied Student a FAPE and that the unilateral iBrain placement was appropriate, albeit for different reasons, the SRO expressly reversed the IHO's decision on the third prong of *Burlington-Carter* regarding the equities. He concluded that equitable considerations warranted a 25 percent reduction of the costs—including related services and transportation—of the student's attendance at iBrain for the 2018-2019 school year. 175162-003950. He declined to endorse IHO Farago's view that the equities be based on a just outcome for S.J.D. because, he wrote, "under the IDEA, reduction or denial of tuition reimbursement . . . represent authorized sanctions that penalize the parents or their attorney—not their children and provide a sufficient deterrent to unreasonably demanding or litigious parents." 175162-003947 (citations, alterations, and internal quotation marks omitted). He determined that Parent's conduct was unreasonable, largely due to his refusal to provide the CSE relevant documentation, including progress reports, about Student's prior iHope IEP without justification and his pattern of often "eleventh hour" objections to meeting notices and rescheduling requests for CSE meetings. 175162-003974 to 3948. "In short, the evidence convincingly shows that at times the parent was unreasonably difficult and frustrating for district personnel to work with." 175162-003948. He then concluded that a reduction of tuition reimbursement, rather than a complete denial of reimbursement, was warranted as a result. SRO Bates reasoned that neither

the district nor the evidence in the record supported a finding that Student had received any

iBrain services that exceeded a level sufficient to provide Student an appropriate education.

175162-003949. The SRO focused on Parent's conduct in fashioning a remedy:

> Instead, taking into account the parent's conduct in the present matter[,] including his uncooperative tactic of refusing to allow the CSE to have information about the student from iHope without justification and his repeated (and at times unreasonable) rescheduling requests, and balancing those considerations against the district's conduct of holding two CSE meetings without parental attendance (including one meeting without any parental notification), I find that a twenty five percent reduction in the total cost of the student's tuition at iBrain, related services, and transportation for the 2018-2019 school is warranted. 175162-003949 (footnote omitted).

SRO Bates ordered that the IHO's ruling be modified "by reversing those portions which

required the district to fund the costs of the student's program at iBrain consistent with the lower

of certain identified measures of the costs of related services and transportation; and . . . [thus]

the district shall be required to reimburse the parent for 75 percent of the costs of the student's

attendance at iBrain for the 2018-2019 school year, including the costs of related services and

transportation." 175162-003950.

## III. Procedural History

Parent commenced this action for judicial review of the SRO decision by federal

complaint on March 4, 2020. ECF No. 1. The complete administrative record was submitted

under seal on August 13, 2020 and September 30, 2020. ECF Nos. 14, 20. On October 2, 2020,

Parent filed a motion for summary judgment, including an accompanying memorandum of law

and declaration from Karl J. Ashanti, Esq.. ECF Nos. 23-25. The DOE filed a cross-motion for

summary judgment on October 30, 2020, including a memorandum of law. ECF Nos. 26-27. The

DOE replied to Parent's motion for summary judgment on November 6, 2020. ECF No. 28. And

Parent replied to DOE's cross-motion for summary judgment on November 30, 2020. ECF No. 31.

## STANDARD OF REVIEW

An aggrieved parent discontent with a SRO's decision to reduce or deny reimbursement may bring an action in federal district court. 20 U.S.C. § 1415(i)(2)(A). The district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). "[T]he procedure is in substance an appeal from an administrative determination, not a summary judgment." *Lillbask*, 397 F.3d at 84 n.3. "As courts in this circuit have observed, a motion for summary judgment in an IDEA case often triggers more than an inquiry into possible disputed issues of fact . . . . [r]ather, the motion serves as a 'pragmatic procedural mechanism' for reviewing a state's compliance with the procedures set forth in IDEA and determining whether the challenged IEP is reasonably calculated to enable the child to receive educational benefits." *Id.* (collecting cases). "[A] motion for summary judgment can serve as an aid to the court within a statutory scheme whose purpose is to ensure that children with disabilities receive the educational benefits to which they are entitled." *Id.* at 81.

That said, "the role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed." *T.Y. & K.Y. ex rel. T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009) (citation omitted). "While the district court must base its decision on the preponderance of the evidence, it must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *A.C. ex rel. M.C. v. Bd. of Educ.*,

553 F.3d 165, 171 (2d Cir. 2009) (internal quotation marks, alterations and internal citations omitted). In other words, the district court must independently review the administrative record and base its decision on the "preponderance of the evidence." *Bd. of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley*, 458 U.S. 176, 205 (1982) (citation omitted). District courts are not permitted to "substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.* at 206. "If a final state determination conflicts with an earlier decision, the earlier decision may be afforded diminished weight." *Gagliardo,* 489 F.3d at 113 n.2 (citing cases). Federal courts shall "defer to the final decision of the state authorities, and . . . deference may not be eschewed merely because a decision is not unanimous or the reviewing authority disagrees with the hearing officer." *Karl ex rel. Karl v. Bd. of Educ. of Geneseo Cent. Sch. Dist.,* 736 F.2d 873, 877 (1984).

## DISCUSSION

### I. Denial of FAPE and Appropriateness of Unilateral Placement

To obtain reimbursement or prospective funding for a private school placement, parents must meet the *Burlington-Carter* test. *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369-70 (1985); *Florence County Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 12 (1993). The test is a three-part inquiry: (1) whether the school district denied the Student of a FAPE, (2) whether the unilateral placement selected by the parent is appropriate, and (3) whether the equitable factors support reimbursement to the parent. *Id.*

Here, the Parties do not challenge the findings of IHO Farago and SRO Bates that (1) the district denied Student a FAPE and that (2) the unilateral private placement at iBrain was appropriate. They have presented no arguments in their motion and cross-motion papers directly contesting those portions of the state administrative decisions. Accordingly, the Court gives due

weight to the SRO's decision in connection with the first two prongs of *Burlington-Carter*. The narrow issue before this Court then is whether the SRO erred in determining, based on the third prong of *Burlington-Carter*, that the equities favor a 25 percent reduction of reimbursement for tuition, related services, and transportation for S.J.D. for the 2018-2019 school year.

## II. Equitable Factors: The Reimbursement Claim

"[A] court . . . may require the agency to reimburse the parents for the cost of th[e] [private school] enrollment if the court . . . finds that the agency had not made a free appropriate public education available to the child in a timely manner prior that enrollment." 20 U.S.C. § 1412(a)(10)(c)(ii). Such cost of reimbursement may be reduced or denied if the family fails to timely object to the appropriateness of a district-developed IEP, "including stating their concerns and their intent to enroll their child in a private school at public expense; or 10 business days . . . prior to the removal of the child from the public school, the parents did not give written notice to the public agency" of the objection to the IEP. 20 U.S.C. § 1412(a)(10)(c)(iii). Full reimbursement may also be reduced or denied if the family fails to "make the child available" for evaluation. 20 U.S.C. § 1412(a)(10)(c)(iii). And, finally, reimbursement may be reduced or denied "upon a judicial finding of unreasonableness with respect to actions taken by the parents." 20 U.S.C. § 1412(a)(10)(c)(iii). District courts "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). "[C]ourts retain discretion to reduce the amount of a reimbursement award if the equities so warrant." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009). "[E]quitable considerations relating to the reasonableness of the action taken by the parents are relevant." *T.P. ex rel S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009).

Parent argues two main grounds for why the SRO erred in its determination that the equities led to a 25 percent award reduction for the Parent. First, Parent argues that the SRO erred in not applying the purported well-settled legal principle that where there is a finding that the DOE failed to provide a FAPE to a student, the parent is entitled to the full reimbursement amount. Relatedly, he claims that he should be awarded full reimbursement where his allegedly unreasonable conduct did not impede the IEP process. Second, Parent contends that the 25 percent reduction amount is unwarranted where parents should be able to engage in vigorous parental advocacy and a reasonable expectation that the district will follow state regulations.

### A. The SRO Did Not Err in Making an Adverse Finding Against Parent on Equitable Grounds

Plaintiff has provided no apposite legal authority holding that a denial of FAPE precludes the reduction or denial of reimbursement. In general, courts in this Circuit have reduced or denied reimbursement on equitable grounds for parental conduct that is uncooperative, obstructive, or otherwise unreasonable. *Bettinger v. N.Y. City Bd. of Educ.,* No. 06 Civ. 6889(PAC), 2007 WL 4208560 at *8 (S.D.N.Y. Nov. 20, 2007) (denial of reimbursement on equitable grounds because parents refused to visit the schools proposed by the district); *J.E. v. N.Y.C. Dep't of Educ.*, 229 229 F.Supp.3d 223, 239-40 (S.D.N.Y. 2017) (concluding that equitable considerations warrant full reimbursement where "the record demonstrates a willingness on the parent's behalf to participate in the DOE process . . . and cooperated in good faith at all times with the DOE . . . and "[t]he record does not show any obstruction or intransigence to participate in the DOE process that would counsel against reimbursement"). *But cf. Gabel ex rel. L.G. v. Bd. of Educ. of the Hyde Park Cent. Sch. Dist.,* 368 F.Supp.2d 313, 329 (S.D.N.Y. 2005) (finding parent's conduct did not rise to level of unreasonableness to warrant

reduction or denial of reimbursement where the court had determined that the district's "utter abdication of its responsibility" to provide a FAPE was "so clear from the record").

In *N.R. ex rel. T.R. v. Dep't of Educ. of City Sch. Dist. of City of New York*, No. 07 CV. 9648 (BSJ), 2009 WL 874061 (S.D.N.Y. Mar. 31, 2009), the single case on which Parent relies, a district judge in this Court determined that the equities warranted a full tuition reimbursement, reversing an SRO's denial of reimbursement of tuition costs. That case is distinguishable from the instant case, however, because the *N.R.* court based its decision on its assessment that "the record [wa]s bereft of any evidence that [p]laintiff hindered Defendants' efforts to provide a FAPE or otherwise frustrated the placement process." *Id.* at *6. That court further concluded that Defendants and the SRO had inaccurately assessed the record: "[T]he record reflects Plaintiff's cooperation with the Department throughout the placement process" where "[p]laintiff timely requested the re-opening of T.R.'s CSE and a recommendation for an appropriate educational program, attended every scheduled CSE meeting, provided the CSE with every document that it requested, visited Defendants' belatedly-provided school placement, and timely filed a notice of hearing." *Id.* at *7.

Unlike the plaintiff in *N.R.*, the record before this Court reflects that Parent was unreasonable throughout the IEP process and made it difficult for the district to work with him to prepare for Student's 2018-2019 IEP. On this record, Parent cannot claim that he played no role in impeding the IEP process whatsoever. Indeed, he *did not* attend every scheduled CSE meeting as multiple requests to reschedule were made (sometimes at the eleventh hour and with little reasonable explanation considering the district's close proximity to the annual review deadline); he was a no show for several evaluation appointments (though he eventually attended with Student); and he failed, after numerous requests over email, phone, and by letter, to provide

progress reports and other documentation in preparation for the June CSE Meeting to the district.[3] Not only is *N.R.* not binding on this Court, but even if it were, the record does not reflect that Parent had no role in impeding the IEP process.[4] This Court therefore concludes that SRO Bates did not err in his failure to rely on Parent's purportedly well-established legal principle.

### B. The SRO Did Not Err in Reducing the Award by 25 Percent

Having determined that the SRO did not err in making an adverse finding against Parent to reduce reimbursement despite the denial of a FAPE, the Court will now turn to whether the 25 percent reduction was warranted. The Court concludes that the SRO did not commit error in imposing the 25 percent reduction. SRO Bates' decision to reduce the award by 25 percent is owed judicial deference because a thorough and careful equities analysis underlies his decision. *Cf. H.L. o/b/o V.L. v. Marlboro Twp. Bd. of Educ.*, No. CV169324FLWDEA, 2017 WL 5463347, at *8-9 (D.N.J. Nov. 14, 2017) (finding that ALJ's decision to deny, rather than reduce, reimbursement without equities analysis was not entitled to deference). "[W]e are further restrained by our lack of specialized knowledge and educational expertise" so "we must defer to the administrative decision particularly where the state officer's review has been thorough and careful." *M.W. ex rel. S.W. v. New York City Dep't of Educ.*, 725 F.3d 131, 139 (2d Cir. 2013)

---

[3] Parent argues that "[b]ecause it is undisputed that DOE failed to provide any notice whatsoever to Parent of the June 23, 2018 IEP meeting, Parent's conduct in making rescheduling requests and alleged non-cooperation in allowing the CSE access to S.J.D.'s old school records had absolutely no bearing on DOE"s denial of FAPE." Pl.'s Mem. at 11. The Court is unpersuaded by this point. First, Parent cites no legal authority, binding or otherwise, that this Court should (or that the SRO should have) ignored his conduct leading up to the June 14, 2018 IEP meeting just because the district failed to provide a prior written notice before the June 23, 2018 reconvene meeting. Second, Parent assumes that the equities are based on his actions somehow contributing to the denial of FAPE. But equitable considerations are focused on unreasonableness. And SRO Bates did just that: he found that parent's conduct, based on well-supported evidence in the record, warranted a reimbursement reduction. Nonetheless, Parent's unreasonable conduct, at least in part, created some of the delay in IEP planning for the 2018-2019 academic year, which the district claimed urged them to move hastily without Parent out of concern for missing the annual review deadline.

[4] Parent's inaccurate view of the law is also inconsistent with the *Burlington-Carter* framework. There would be no need for a third prong—the equities—if it were the case that a finding of a denial of FAPE and an appropriate unilateral placement (the first two prongs) precluded denial or reduction of reimbursement costs for families.

(internal quotation marks, citation, and alterations omitted). SRO Bates prepared a 41-page decision—relying on a range of evidence from the administrative record, to include both parties' exhibits, hearing transcripts, IHO Farago's decision—and provided a well-reasoned analysis of the equities prong of the *Burlington-Carter* test. Though he departed from IHO Farago's approach of awarding Parent the lowest costs, he explained why in a reasoned manner. Moreover, both IHO Farago and the SRO agreed that the equities weighed against Parent due to his conduct and warranted a reduction in reimbursement. They just had conflicting approaches to the amount of reduction. The SRO based his decision on the parent's conduct—which was well-supported in his ruling and in the record before this Court. He then concluded that "the evidence convincingly show[ed] that . . . parent was unreasonably difficult and frustrating for district personnel to work with." 175162-003948. This Court, therefore, defers to the SRO's sound reasoning regarding the equities in this case and expertise in fashioning the reduction amount.

The Court is also not convinced by Parent's policy argument that Congress intended that districts be reasonably expected to comply with state regulations regardless of parental conduct. The case upon which the point is based, *Warren G. ex rel. Tom G. v. Cumberland Cty. Sch. Dist.*, 190 F.3d 80 (3d Cir. 1999), was decided before Congress amended the limitations on reimbursement in the IDEA statute. *Id.* at 86 n.3. Thus, the statutory provisions permitting a reduction or denial based on a judicial finding of unreasonableness, at that earlier time in IDEA history, did not apply to the plaintiffs in *Warren G ex rel* as they do to Plaintiff in this case. Furthermore, district courts have recognized that the IDEA is intended to be a collaborative process between school districts and families. *See, e.g.*, *Dep't of Educ. v. S.C. ex rel. Doug C.*, 938 F. Supp.2d 1023, 1032-33 (D. Haw. 2013). Therefore, the Court is unpersuaded that, as a matter of policy, it should modify or reverse the 25 percent reduction amount set by the SRO.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is **DENIED** and

Defendant's cross-motion for summary judgment is **GRANTED**. The Clerk of Court is directed

to terminate the motions at ECF Nos. 23 and 26 and to close this case.

**SO ORDERED.**

DATED: September 30, 2021
      New York, New York

                                 The Hon. Andrew L. Carter, Jr.
                                 United States District Judge